**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MR. KIRK HERSE and MRS. PATRICIA HERSE,

                                    Plaintiffs,                    6:24-cv-0065 (BKS/TWD)

v.

TIMOTHY P. SHEEHAN, JOHN MICHAEL
HIMMELBERG, JUSTIN LOVENDUSKY, HSBC
BANK, MIDWEST SERVICING INC, MIDWEST
SERVICING 2, INC, MIDWEST ASSET ACCEPTANCE
GROUP, U.S. Bankruptcy Trustee MARK SWIMELAR,
And JOHN and JANE DOES 1–10 yet to be identified,

                                    Defendants.

---

**Appearances:**

*Plaintiffs Pro se:*
Kirk Herse
Patricia Herse
Lowville, NY 13367

*For Defendants Timothy P. Sheehan, John Michael Himmelberg, Justin Lovendusky, Midwest
Servicing Inc., Midwest Servicing 2, Inc., and Midwest Asset Acceptance Group:*
Donald W. O'Brien, Jr.
John Kevin McAndrew
Woods Oviatt Gilman LLP
1900 Bausch & Lomb Place
Rochester, NY 14604

*For Defendant HSBC Bank:*
James P. Wright, Jr.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202

*For Defendant Mark Swimelar:*
Edward J. Fintel
Office of the Chapter 12 Trustee
250 South Clinton Street – Suite 203
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs pro se Kirk and Patricia Herse bring this action alleging unlawful billing and collections processes against Defendant mortgage servicing companies and others in connection with the foreclosure against the "Herse Farm Property" located at 7963 State Route 12, Lowville, New York. (Dkt. No. 1). Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (*Id.*). Presently before the Court are motions to dismiss by Defendant Mark Swimelar, Defendants Timothy P. Sheehan, John Michael Himmelberg, Justin Lovendusky, Midwest Servicing Inc., Midwest Servicing 2, Inc., and Midwest Asset Acceptance Group (collectively the "Midwest Defendants"), and Defendant HSBC Bank under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim. (Dkt. Nos. 20, 21, 35, 44). Plaintiffs have opposed Defendants' motions. (Dkt. Nos. 26, 43, 47, 48). Defendants Swimelar and HSBC have filed replies. (Dkt. No. 28, 49). For the reasons that follow, Defendants' motions are granted.

## II.    MATERIALS OUTSIDE THE PLEADINGS

Plaintiffs have filed a number of submissions in support of the Complaint and their motion for a temporary restraining order, and in opposition to Defendants' motion. (Dkt. Nos. 1, 10, 26, 43, 47, 48). Defendant Swimelar and the Midwest Defendants have submitted a number of documents in support of their respective motions to dismiss. (*See* Dkt. Nos. 20, 35). The Court therefore must determine what evidence it may refer to in considering the present motions to dismiss.

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may refer to evidence outside the pleadings. *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at \*2, 2021 U.S. Dist. LEXIS 99456, at \*5 (N.D.N.Y. May 26, 2021). Thus, to the extent these submissions are relevant to the application of the *Barton* and *Rooker-Feldman* doctrines, the Court may consider them. However, to the extent the parties seek the Court's consideration of these submissions in connection with the Rule 12(b)(6) motions, further analysis is required.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). A contract that forms the basis of a plaintiff's claims may, for example, be integral to a complaint for breach of contract. *See*, *e.g.*, *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107–08 (2d Cir. 2021).

However, even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be

considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

Defendant Swimelar has filed an affidavit, (Dkt. No. 20), to which he has attached the dockets for the three bankruptcy cases Plaintiffs filed in the Bankruptcy Court for the Northern District of New York, (Dkt. Nos. 20-1, 20-2, 20-3). The Midwest Defendants have filed the Note, dated December 31, 2022, executed by the Plaintiffs, (Dkt. No. 35-2), the September 11, 2002 collateral security mortgage, (Dkt. No. 35-3), the "Allonge" documents purporting to show the series of assignments of the note to various entities, (Dkt. No. 35-2), the Judgment of Foreclosure entered on August 25, 2006, (Dkt. No. 35-4), the Amended Judgment of Foreclosure entered on May 11, 2012, and affidavit of service, (Dkt. Nos. 35-5, 35-6), a series of orders issued by the Bankruptcy Court, (Dkt. Nos. 35-7, 35-8, 35-9), and the "Affidavit of Service of the Referee's Notice of Sale in Foreclosure," (Dkt. No. 53-10). The Bankruptcy Court dockets and orders and Judgment and Amended Judgment of Foreclosure are public documents and thus the proper subject of judicial notice. However, judicial notice is limited to "the fact of such litigation and related filings" and the Court does not consider those documents "for the truth of the matters asserted in the other litigation." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A.*, Inc., 146 F.3d 66, 70 (2d Cir. 1998) (quoting *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)); *see also Hobby Lobby Stores, Inc. v. Christie's Inc.*, 535 F. Supp. 3d 113, 115 n.2 (E.D.N.Y. 2021) (taking "judicial notice of the government's complaint in the related civil forfeiture action, and statements made on the record in that proceeding") (internal citation omitted).

Swimelar's affidavit contains facts outside those alleged in the Complaint and is neither integral to the Complaint nor subject to judicial notice. Although the Note and Mortgage are referenced in the Complaint, Plaintiffs do not reference any of the other documents filed by the Midwest Defendants. Further, the Court reads Plaintiffs' assertion that this case is "not ripe for summary judgment" and reference to discovery, (Dkt. No. 47-2, at 3), as an objection to the Court's consideration of matters outside the pleadings. Accordingly, in deciding the Rule 12(b)(6) component of Defendants' motions, the Court declines to consider the documents Defendants filed. *See, e.g., Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 416 & n.4 (S.D.N.Y. 2010) (declining to consider note and mortgage in light of the plaintiffs' objections to the authenticity of the documents).

The Court must also decide whether to consider the submissions Plaintiffs filed since filing the Complaint, including: a motion for a temporary restraining order, which consists of a two-page letter from Plaintiffs outlining events occurring in Lewis County Supreme Court from September 2023 to April 2024, (Dkt. No. 10, at 1–2), and a form "complaint and request for injunction," (*id.* at 3–8); three substantively identical responses to Defendants' motions, (Dkt. Nos. 26, 43, 48 (arguing Defendants are not entitled to immunity)); a second response to HSBC's motion, which contains, among other things, several HSBC-related exhibits dated 2002 to 2010, a handwritten list of "30 mortgages" that "got transferred" by HSBC (or Sheehan) to "shell companies," and various professional profiles of Defendant Sheehan, (Dkt. No. 47; *see also* Dkt. No. 47-2 (additional opposition to HSBC's motion to dismiss)); and an affidavit by Salvador J. Jullian, (Dkt. No. 43-1, at 2–4; Dkt. No. 47-1, at 1–3).

"[I]n cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the

allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see DeRocha v. Linstruth*, No. 18-cv-1052, 2019 WL 5596252, at *1 n.1 (N.D.N.Y. Oct. 30, 2019) ("The mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss . . . to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.").

Here, the Court considers the additional facts in Plaintiffs' motion for a temporary restraining order and responses to Defendants' motion to dismiss to the extent they are consistent with the allegations in the Complaint. The Court does not consider the affidavit by Salvador J. Jullian, who is not a party to this case, because neither Plaintiffs nor Jullian explain Jullian's connection to this case or whether Jullian has any personal knowledge of the facts.

## III.    FACTS[1]

### A.    Plaintiffs' Complaint and Submissions

On or about July 26, 2002, Plaintiffs received a letter from HSBC informing them that their "loan request" to purchase a farm property and "refinance existing indebtedness" had been approved. (Dkt. No. 47, at 5). Plaintiffs assert that they paid $250,000 to the "farms [sic] previous owner" and that their "banker" told them it would be convenient to "put [their] other

---

[1] These facts are drawn from the Complaint, (Dkt. No. 1), the Motion for Temporary Restraining Order, which, construed liberally, appears to supplement the Complaint, (Dkt. No. 10), and Plaintiffs' responses to Defendants' motions to dismiss. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court has also taken judicial notice of several documents issued by the Lewis County Supreme Court and Bankruptcy Court for the Northern District of New York, but, as discussed, the Court takes notice only of "the fact of such litigation and related filings" and not "for the truth of the matters asserted in the other litigation." *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70 (quoting *Liberty Mutual Ins. Co.*, 969 F.2d at 1388).

debts under the umbrella" of the mortgage, bringing the total amount of the loan to $350,000. (*Id.*).

On August 25, 2006, the Lewis County Supreme Court entered a Judgment of Foreclosure and Sale in HSBC's favor in connection with the Herse Farm Property, ordered that the property be sold, and found that the "amount due upon the Notes and Mortgage" was "the sum of $358,519.65," and that HSBC was entitled to that sum as well as $3,500 in legal fees and $1,791.85 in costs. (Dkt. No. 35-4, at 2–4). On October 11, 2006, Plaintiffs filed a Chapter 12 Voluntary Petition in the Bankruptcy Court for the Northern District of New York ("2006 Bankruptcy Case"). (Dkt. No. 20-1, at 2 (Case No. 06-62514, Dkt. No. 1)).

In or about 2008, HSBC informed Plaintiffs that their "loans have been sold and conveyed to CVM Partners 1, LLC," and that "[s]ervicing of the loan has been assigned to Midwest Servicing, Inc." (Dkt. No. 47, at 2). According to the July 16, 2008 "Assignment of Note, Mortgage, and Other Documents," ("2008 Assignment"), signed by Defendant Timothy Sheehan as HSBC's "Authorized Agent," HSBC assigned Plaintiff's note and mortgage "in the amount of $491,832.66" to CVM Partners 1, LLC, which, Plaintiffs allege was "under the Midwest Platform." [2] (Dkt. No. 47, at 6–7; Dkt. No. 10, at 6). Plaintiffs raise two issues with respect to this purported assignment. First, Plaintiffs appear to assert that Sheehan was operating under a conflict of interest at the time he signed 2008 Assignment as HSBC's representative because, at the time, Sheehan was also the "legal signing representative" and "Pres or CEO" of CVM Partners 1, LLC."[3] (Dkt. No. 10, at 6; Dkt. No. 47, at 7). Second, Plaintiffs assert that they

---

[2] Plaintiffs allege that the "initial transfer" of their mortgage was part of a group of "30 mortgages" that Defendant Sheehan, who was "the paid legal representative of HSBC" transferred these mortgages to "himself and his other legal partners . . . to avoid paying Internal Revenue Service taxes." (Dkt. No. 10, at 1).

[3] Plaintiffs further assert that Defendant John Michael Himmelberg was also a "Pres or CEO" of CVM Partners 1, LLC. (Dkt. No. 10, at 6).

"had not borrowed in the amount of $491,832.66," but that Sheehan included that amount in "every document" and sent the 2008 Assignment with the incorrect amount through the "US Postal" Service and filed it in Lewis County Supreme Court.[4] (Dkt. No. 47, at 6). Plaintiffs maintain that "[t]he cost of the Farm when it was purchased on court house steps was $249,000.00 plus $1000.00 for a total of 250,000 not . . . the claimed $491,832.66 asserted by these Defendants." (Dkt. No. 1, at 9). Plaintiffs allege that Defendants "have employed multiple sets of fraudulent financial records in their continuing pursuit of the theft" of the Herse Farm. (*Id.*).

On July 10, 2008, a "Transfer of Claim" "[f]rom HSBC Bank . . . to CVM Partners 1, LLC," was filed in the 2006 Bankruptcy Case. (Dkt. No. 20-1, at 9 (Case No. 06-62514, Dkt. No. 85)). On April 8, 2011, the Bankruptcy Court entered an order dismissing and closing the 2006 Bankruptcy Case. (*Id.* at 16 (Case No. 06-62514, Dkt. No. 169)).

On May 9, 2012, the Lewis County Supreme Court entered an Amended Judgment of Foreclosure and Sale as to the Herse Farm Property. (Dkt. No. 35-5). The Lewis County Supreme Court noted that CVM Partners 1, LLC "assigned all its right, title and interest in and to the Note and Mortgage to ACM Browncroft Trust by written assignment dated as of January 25, 2012," and that ACM Browncroft Trust was "continuing with the mortgage foreclosure action as the plaintiff."[5] (*Id.* at 3). The state court entered judgment in favor of ACM Browncroft Trust and found that the "amount due" on the "Mortgaged Property" was $295,725.18, and that ACM

---

[4] Plaintiffs also assert that at the time of the 2008 Assignment, HSBC changed a "milk deduction," and took "the normal amount of $3,200" from Plaintiffs "but, also took out an additional amount of $3,200" placing Plaintiffs in "a financial [sic] distressed position to pay [their] monthly bills." (Dkt. No. 47, at 2). Although HSBC assured Plaintiffs that it would apply the additional amount to the "interest" Plaintiffs owed, applying the additional amount to interest did "not help [them] pay [their] bills at the time." (*Id.*). Plaintiffs do not allege HSBC failed to apply the additional amount to interest or that HSBC did not apply their payment to their account.

[5] Plaintiffs allege that ACM Browncroft was also under the "Midwest Platform." (Dkt. No. 10, at 6).

Browncroft Trust was entitled to attorney's fees in the amount of $1,958.34—the sum of $3,500, as previously awarded, and "the sum of $28,000.00 for additional reasonable legal fees." (*Id.* at 2–5).

On August 15, 2012, Plaintiff Kirk Herse filed a second Chapter 12 Voluntary Petition in the Bankruptcy Court for the Northern District of New York ("2012 Bankruptcy Case"). (Dkt. No. 20-2, at 1 (Case No. 12-61530, Dkt. No. 1)). Plaintiffs allege that they were "to have a hearing date of March 10, 2020," in Utica, NY, but said hearing "never took place because the amount of $50,351.22 that was initially placed against [Plaintiffs'] total indebtedness was shortly removed." (Dkt. No. 10, at 1). Plaintiffs claim this "became an instrument of the Federal Bankruptcy Courts and nothing was ever approved" by the bankruptcy court or Defendant Trustee Mark Swimelar. (*Id.*). On September 21, 2020, the Bankruptcy Court issued a Final Decree and closed the 2012 Bankruptcy Case. (*Id.* at 13 (Case No. 12-61530, Dkt. No. 160)).

On May 20, 2022, Plaintiff Kirk Herse filed a third Chapter 12 Voluntary Petition in the Bankruptcy Court for the Northern District of New York ("2022 Bankruptcy Case"). (Dkt. No. 20-3, at 1 (Case No. 22-60339, Dkt. No. 1)).

Plaintiffs allege that on September 29, 2023, two conference calls were to take place between their lawyer and "the lawyers representing the lawyers that brokered the initial transfer of the mortgage" for the purpose of scheduling an evidentiary hearing on October 10, 2023.[6] (Dkt. No. 10, at 1). However, during the second call, the "three participants," without advising Plaintiffs, "nullif[ied] [Plaintiffs'] ability to bring massive evidence forward of [sic] the courts" and instead "put in place a bankruptcy plan that had been denied 3 times and okayed by two

---

[6] Plaintiffs do not identify the venue for the evidentiary hearing.

bankruptcy judges." (*Id.*). Plaintiffs allege that the lawyers "added monstrous amounts of legal fees," with "crazy interest." (*Id.*).

On December 13, 2023, the Bankruptcy Court entered an order dismissing the 2022 Bankruptcy Case with prejudice and barring Plaintiffs from filing any future cases "which would seek to impose the automatic stay" with respect to the "Property." (Dkt. No. 35-9, at 3).

On or about January 5, 2024, "shysters sent [Plaintiffs] through the U.S. Postal Service" "a 230–240+ page doc" adding "$124,000+ of legal fees" to Plaintiffs' indebtedness. (Dkt. No. 10, at 1). This "record of instrument of the court" was also "sent to the Lewis County Supreme Court-Hon. Judge Charles C. Merrell." (Dkt. No. 10, at 1). At a hearing on January 12, 2024, in Lewis County Supreme Court, Judge Merrell asked John K. McAndrew[7]: "Am I to understand that the indebtedness on Mr. Herse's farm is now $535,000"? (*Id.*). McAndrew responded: "That is right your honor." (*Id.*). Judge Merrell replied that he needed time to review the "240-page document" and that the hearing would be rescheduled for a future date. (*Id.*).

However, "the rescheduling of this event never took place because [Plaintiffs] had had enough of this" and because it had "been conveyed" that Plaintiffs' "property was scheduled to be sold on April 10, 2024." (Dkt. No. 10, at 2). Plaintiffs assert that they "were never notified and it was never advertised in venues and newspapers as required by law." (*Id.*).

On January 16, 2024, Plaintiffs filed the present complaint against HSBC, the individual Defendants, and the "servicing companies to the shell LLCs/trusts and entities beyond." (*Id.*; *see* Dkt. No. 1). After Plaintiffs filed the Complaint, "the parties removed the 240+ page document and [Plaintiffs'] new day in court was cancelled." (Dkt. No. 10, at 2). When Plaintiffs contacted Judge Merrell's secretary in March 2024, to inquire whether the conference would be

---

[7] McAndrew is counsel of record for the Midwest Defendants in the present case.

rescheduled and whether they could schedule a conference with Judge Merrell, he was told that Judge Merrell "would not entertain [Plaintiffs'] request unless [they] got proper legal counsel to file the motions properly." (*Id.*).

According to the Complaint, Defendants have fraudulently increased, padded, and inflated the "alleged debt figures" against the "Herse Farm Property" in an effort to steal it "by and through fraudulent amounts not actually owed on the farm property." (Dkt. No. 1, at 2). Since "2008 and continuing currently," Defendants "have employed" the United States Postal Service ("USPS") to engage in a false billing schemed aimed at stealing and converting the Herse Farm Property "to [t]hemselves." (Dkt. No. 1, at 2). "The evidence of the fraudulent billing scheme is replete though [sic] the billing and collection practices of the named Defendants." (*Id.* at 2). Defendants "have employed fraudulent pleadings and filings" in the United States Bankruptcy Court "to further the said billing fraud and property theft." (*Id.* at 3). Plaintiffs allege that these practices constitute unlawful acts, in violation of RICO, and notes that "dairy products and derivatives are traded and shipped in interstate commerce "and direct affect United States National Food Security Issues." (*Id.*). Defendants' "unlawful collections and illegal foreclosure practices" violate the Fair Debt Collections Practices act and further the "unlawful theft of the Herse Farm, Farm Equipment, Farm House, and Property."[8] (*Id.*).

Plaintiffs seek a "production of records," and a "certified sworn accounting of all payments, deductions, charges and attorney fees." (Dkt. No. 1, at 8). Plaintiffs demand that the

---

[8] Plaintiffs further assert that their property is protected by the Fourth and Fifth Amendments to the Constitution and that the Defendants have engaged in criminal acts. (Dkt. No. 1, at 3–4). However, even construing the Complaint liberally, it does not appear to raise constitutional claims and there is no private right of action for a violation of New York Penal Law. *See Patterson v. Patterson*, No. 16-cv-00844, 2019 WL 1284346, at *7, 2019 U.S. Dist. LEXIS 46167, at *19 (W.D.N.Y. Mar. 20, 2019) ("Courts within this Circuit have . . . held consistently that criminal charges under New York law 'cannot be prosecuted by a private person.'" (quoting *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009)).

Defendants produce the mortgage records, "certified accounting files, records documents material and relevant to the correct and true balances owed and outstanding on the Herse Farm." (Dkt. No. 1, at 9). Specifically, Plaintiffs allege the CVM Partners 1, LLC billed "$29,000+" "with no billing ever while in bankruptcy" and "no filings," ACM Browncraft Trust "charged" $33,458.34 but "never put fees before the court" and never obtained "an approval by the Trustee," Defendant Swimelar. (Dkt. No. 10, at 7). Plaintiffs also claim they were charged a "property preservation fee—$8,173.99," though Plaintiffs never received a bill showing "what this was for." (*Id.*). Plaintiffs appear to allege fraud was committed through the USPS by sending this fee via the mail to Plaintiffs' lawyer and to the court. (*Id.*).[9] Plaintiffs seek compensatory damages, punitive damages, and declaratory and injunctive relief "to halt the fraudulent collection efforts against the Herse Farm Property." (*Id.* at 11).

### B.    Defendants' Evidence

On or about September 11, 2002, Plaintiffs executed a collateral security mortgage on the Herse Farm Property in the amount of $350,000 to HSBC. (Dkt. No. 35-3, at 3). On or about December 31, 2002, Plaintiffs executed a note promising to pay HSBC; the note specifies that "[t]he aggregate principle amount of all advances outstanding hereunder shall not at any time exceed $491,832.66." (Dkt. No. 35-2, at 2–4). Attached to this note are "Allonge" documents showing that on or about June 27, 2008, HSBC assigned the note and mortgage to CVM Partners 1, LLC, that on or about January 25, 2012, CVM Partners 1, LLC assigned the note and mortgage to ACM Browncroft Trust, that on or about July 26, 2012, ACM Browncroft Trust

---

[9] Plaintiffs further allege that during the bankruptcy proceedings, Defendants told the Bankruptcy Court that Plaintiffs did "not belong in Chapter 12" and "labeled" Plaintiffs as "serial bankruptcy filer[s]." (Dkt. No. 10, at 7). Plaintiffs further allege that Defendants "leveraged 900 officials not to help [Plaintiffs] during the pandemic," "leveraged lawyers in NYS to remove income from two potential windmills—$45,000 so they could foreclose . . . 30yr contracts," and told "officials with government" that Plaintiffs were "current with mortgage" when Plaintiffs "had not made payments in 2 years." (*Id.*).

assigned the note and mortgage to ACM Browncroft NPL, LLC, and that on or about February 29, 2016, ACM Browncroft NPL, LLC assigned the note and mortgage to FMM Bushnell, LLC. (Dkt. No. 35-2, at 5–38). Only the initial note holder, HSBC Bank, is named as a Defendant in this case.[10] However, Plaintiffs assert that all the above entities are "under" the "Midwest Platform" of mortgage servicing companies. (Dkt. No. 10, at 6).

On or about August 25, 2006, prior to HSBC's first assignment of the note and mortgage, the Lewis County Supreme Court entered a Judgment of Foreclosure and Sale against Plaintiffs. (Dkt. No. 35-4, at 2). The state court explained that HSBC brought the action "to foreclose a mortgage because of default in the payment of interest and principal" and that based on the referee's report, it appeared that "the sum of $358,519.65 was due as of May 25, 2006 with interest thereon." (Dkt. No. 35-4, at 2). The state court "ratified and confirmed" the referee's report "in all respects," and ordered that the Farm Property "be sold in one parcel together with the Personal Property." (*Id.*). The state court appointed the Referee for the purpose of conducting the sale, including providing requisite notice and publication. (*Id.* at 3–4). HSBC was awarded $3,500 in legal fees, and costs in the amount of $1,791.85. (*Id.* at 4–5). This judgment was not appealed to the New York Appellate Division. (Dkt. No. 35-1, ¶ 7).

On October 11, 2006, Plaintiffs filed the 2006 Bankruptcy Case. (Dkt. No. 20, ¶ 5 (referring to case number: 06-62514)). Defendant Swimelar was appointed as Trustee and on September 30, 2010, moved to dismiss the case "due to Plaintiffs' failure to make plan payments

---

[10] Plaintiffs allege that Defendant Sheehan is "Pres. Of Multiple Servicing Inc. and CEOs + Pres's of LLCs," "was paid by HSBC," and was president or CEO of CVM Partners 1, LLC, that Defendant Himmelberg is "Pres + CEO of Multiple LLCs + Trusts (Ex. ACM Browncroft Tr. LLC)" and a president or CEO of CVM Partners 1, LLC, that Defendant Lovenduski is "Partner + Founder in multiple LLCs + Trusts – Multiple States Location." (Dkt. No. 10, at 4–6).

pursuant to the Order of Confirmation." (*Id.* ¶ 5). Plaintiffs did not oppose Swimelar's motion

and on March 17, 2011, the Bankruptcy Court entered an order of dismissal. (*Id.*).

On May 9, 2012, the Lewis County Supreme Court entered an Amended Judgment of

Foreclosure and Sale as to CVM Partners 1, LLC. (Dkt. No. 35-5, at 2). The state court explained

that Plaintiffs' filing of the 2006 Bankruptcy Case after the first Judgment of Foreclosure was

entered, stayed further action against them under the United States Bankruptcy Code's automatic

bankruptcy stay provision. (*Id.* at 2–3 (citing 11 U.S.C. § 362(a))). The state court further

explained that the Bankruptcy Court had directed Plaintiffs "to pay $3,000 to the Chapter 12

Trustee on the 15th of each month, of which $2,389.41 would be paid to CVM Partners 1, LLC,"

but that when Plaintiffs "defaulted," the Bankruptcy Court granted CVM Partners 1, LLC relief

from the stay, permitted it to proceed with foreclosure, and dismissed the case. (*Id.*). The state

court further noted that CVM Partners 1, LLC, had assigned all right, title and interest in and to

the Note and Mortgage to ACM Browncroft Trust. (*Id.*). Relying on a report by the Referee, the

state court noted that it appeared that the "sum of $295,725.18 was due as of December 15,

2011." (*Id.*). Accordingly, the state court issued an Amended Judgment of Foreclosure and Sale,

amending the caption to show ACM Browncroft Trust as the party in interest, ratifying the

Referee's report, and ordering that the Herse Farm Property be sold. (*Id.* at 3–4). In addition, the

state court awarded ACM Browncroft Trust attorney's fees in the amount of $1,958.34, the sum

of $3,500, as previously awarded, "the sum of $28,000.00 for additional reasonable legal fees,"

and "the sum of $295,725.18 for said amount so report due as aforesaid." (*Id.* at 5).

On August 15, 2012, Plaintiff Kirk Herse filed a "second chapter 12 case"—the 2012

Bankruptcy Case. (Dkt. No. 20, ¶ 6 (referring to Case No. 12-61530)). Swimelar was again

appointed Trustee. (*Id.* ¶ 4). "Plaintiff Kirk Herse successfully completed his Chapter 12 plan

and a Discharge Order was entered on March 30, 2020." (*Id.* ¶ 6). However, according to Swimelar, "the mortgage creditor filed an Affirmation stating that the Plaintiff failed to make any post-petition mortgage payments that came due as of April 1, 2019," and "Plaintiff Kirk Herse did not oppose or object to the mortgage creditor's statements regarding the continuing default." (*Id.*).

On May 20, 2022, Plaintiff Kirk Herse filed the 2022 Bankruptcy Case. (*Id.* ¶ 7 (referring to Case No. 22-60339)). On June 29, 2023, the Bankruptcy Court entered an order denying Kirk Herse's "Objection" to FMM Bushnell, LLC's[11] claim filed for the sum of $405,248.10. (Dkt. No. 35-7, at 2). The Bankruptcy Court noted that a hearing on the matter had been held on May 31, 2023, with counsel for FMM Bushnell and Kirk Herse present, and found "that the initial base amount of the FMM Claim as set in the Order of Confirmation entered" in the 2012 Bankruptcy case "in the sum of $350,000.00 as of March 17, 2014 plus interest . . . is beyond challenge." (*Id.* at 2–3). The Bankruptcy Court further held that "any objection to the FMM Claim may only relate to the amounts added to the Base Amount after March 17, 2014." (*Id.* at 3).

On October 2, 2023, the Bankruptcy Court entered an order granting FMM Bushnell relief from the automatic stay and conditionally granting FMM Bushnell's motion to dismiss. (Dkt. No. 35-8, at 2). The Bankruptcy Court ordered that in the event Kirk Herse "default[ed] under any Plan confirmed in this case and fails to cure said default after ten (10) days' notice provided to [his] counsel," the bankruptcy case would be dismissed with prejudice. (Dkt. No. 35-8, at 3).

---

[11] As noted above, in 2016, ACM Browncroft assigned the note and mortgage to FMM Bushnell.

On November 14, 2023, the Bankruptcy Court entered an Amended Confirmation Order confirming the plan. (Dkt. No. 20, ¶ 7). This Order was not appealed. (*Id.*). On November 27, 2023, the "mortgage holder" provided a "letter of non-compliance" to Plaintiff's attorney stating that "the Plaintiff is in default and demanded payment of real property taxes due on Plaintiffs' property within ten (10) days." (*Id.*). On December 8, 2023, the mortgage holder filed an "affirmation of non-compliance." (*Id.*). On December 13, 2023, the Bankruptcy Court dismissed the 2022 Bankruptcy Case with prejudice. (*Id.*; Dkt. No. 35-9, at 2–3). Specifically, the Bankruptcy Court terminated the automatic stay as to FMM Bushnell, granted FMM Bushnell "leave to foreclose its Mortgage on 7963 State Route 12, dismissed Kirk Herse's bankruptcy case with prejudice, and precluded Kirk and Patricia Herse from filing any future bankruptcy cases which would seek to impose the automatic stay against FMM Bushnell. (Dkt. No. 35-9, at 3).

On or about March 14, 2024, Referee James Moseman issued a "Notice of Sale in Foreclosure" pursuant to the August 25, 2006 Judgment of Foreclosure and Sale, Amended Judgment entered on May 11, 2012, and Order amending Judgment entered on July 30, 2021. (Dkt. No. 35-10, at 4). The Notice stated that the Herse Farm Property would be sold "at public auction on April 17, 2024." (*Id.*; *see also id.* at 11, 13 (letters to Plaintiffs enclosing Notice of Sale)).

## IV.   STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). A motion to dismiss based on an abstention doctrine

16

is considered a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), *City of New York v. Milhelm Attea & Bros.*, Inc., 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008), as is a motion to dismiss under the *Rooker-Feldman* doctrine, *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018). A district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738

F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

"Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## V.    DISCUSSION

### A.    *Barton* Doctrine

Defendant Swimelar seeks dismissal under the *Barton* Doctrine, on the ground that

Plaintiffs failed to obtain leave from the bankruptcy court to sue him in his capacity as trustee.

(Dkt. No. 21, at 4–5). Plaintiffs oppose dismissal arguing that Defendant Swimelar is "not

immune" from suit. (Dkt. No. 26).

"A trustee in bankruptcy is an officer of the court that appoints him." *In re Lehal Realty*

*Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996). While "there is 'no question that a trustee in

bankruptcy may be held personally liable for breach of his fiduciary duties,'" because "the court

that appointed the trustee has a strong interest in protecting him from unjustified personal

liability for acts taken within the scope of his official duties," *id.* (quoting *In re Gorski*, 766 F.2d

723, 727 (2d Cir. 1985), "leave of the appointing court" is required "before a suit may go

forward in another court against the trustee," *id.* (citing *Barton v. Barbour*, 104 U.S. 126 (1881)).

Thus, under the *Barton* doctrine, a "[p]laintiff must first seek leave from the bankruptcy

court before filing a lawsuit against the trustee." *Amelio v. Morris*, No. 19-cv-8696, 2019 WL

5294931, at *2, 2019 U.S. Dist. LEXIS 180829, at *3–4 (S.D.N.Y. Oct. 18, 2019) (citing *In re*

*Lehal Realty Assocs.*, 101 F.3d at 276 (2d Cir. 1996)); *see Plimpton v. Bank of Jackson Hole*, No.

20-cv-00323, 2021 WL 765243, at *11, 2021 U.S. Dist. LEXIS 36248, at *30  (D. Conn. Feb.

26, 2021) ("It is well settled that when an individual sues a trustee for acts taken in the trustee's

capacity as an officer of the court, the individual must first obtain leave of the court that

appointed the trustee." (quoting *Peia v. Coan*, No. 05-cv-1029, 2006 WL 798873, at *1, 2006

U.S. Dist. LEXIS 12811, *2–3 (D. Conn. Mar. 23, 2006))).

Here, Plaintiffs sue Defendant Swimelar for acts taken in his capacity as the trustee appointed in their three bankruptcy cases. (*See* Dkt. No. 1, at 1 (naming Swimelar as a defendant in his capacity as "US Bankruptcy Trustee"), 8 (alleging "bankruptcy fraud")). However, there is no allegation in the Complaint or indication in the record that Plaintiffs obtained leave of United States Bankruptcy Court for the Northern District of New York, the Court that appointed Swimelar as trustee, before bringing this action. Accordingly, Defendant Swimelar's motion to dismiss is granted.[12] *See Peia*, 2006 WL 798873, at *2, 2006 U.S. Dist. LEXIS 12811, at *4 ("[The plaintiff] did not obtain leave of the Bankruptcy Court before filing this lawsuit [against the trustee] in the district court. As a result, this court does not have jurisdiction to hear [the plaintiff]'s claims." (citing *Barton*, 104 U.S. at 131)).

### B.  *Rooker-Feldman*

HSBC and the Midwest Defendants argue that because Plaintiffs' claims stem from injuries caused by the Amended Judgment of Foreclosure and Sale entered in Lewis County Supreme Court in 2012, the Complaint is barred by the *Rooker-Feldman* doctrine. (Dkt. No. 35-11, at 11–12; Dkt. No. 44-1, at 5–6). Plaintiffs oppose dismissal. (Dkt. Nos. 43, 47, 48)

"Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *see Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (explaining that the *Rooker-Feldman* doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

---

[12] Having dismissed Plaintiff's claims against Swimelar under the *Barton* doctrine, the Court does not reach Swimelar's remaining arguments.

judgments" (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))). There are four "requirements" that must be satisfied before *Rooker-Feldman* applies: (1) the "federal-court plaintiff must have lost in state court," (2) the plaintiff "must complain of injuries caused by a state-court judgment," (3) the plaintiff "must invite district court review and rejection of that judgment," and (4) the state-court judgment "must have been rendered before the district court proceedings commenced." *Green*, 585 F.3d at 101 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (internal quotation marks and brackets omitted). The underlying principle of the *Rooker-Feldman* doctrine is that "within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85.

Here, the first and fourth *Rooker-Feldman* requirements have been met: an Amended Judgment of Foreclosure and Sale was entered against Plaintiffs and in favor of CVM Partners 1, LLC on May 11, 2012, (Dkt. No. 35-5), more than eleven years before Plaintiffs commenced this action, (*see* Dkt. No. 1 (Complaint filed on Jan. 16, 2024)). *See Vossbrinck*, 773 F.3d at 426 (finding "factors numbered (1) and (4) . . . clearly satisfied" where the plaintiff "lost in the state foreclosure action, and the foreclosure judgment was entered before [the plaintiff] filed his first federal complaint"). Accordingly, the Court must consider the second and third factors as to Plaintiffs' claims.

Although it raises other issues, construed liberally, the gravamen of Plaintiffs' Complaint appears to be that Defendants—HSBC, the mortgage servicing companies and their representatives, and the bankruptcy trustee—fraudulently increased the amount Plaintiffs owed on the mortgage from $250,000 to $491,832.66 and have imposed excessive fees and costs to increase the alleged debt. (Dkt. No. 1, at 9 ("At no time have the Herses ever owed $491,832.66

against their farm. These Defendants repeatedly and [sic] continue to employ false accounting and balance owed claims against the Herses.")). Plaintiffs seek compensatory and punitive damages as well as declaratory and injunctive relief "to halt the fraudulent collection efforts against the Herse Farm Property." (Dkt. No. 1, at 11). The Amended Judgment of Foreclosure and Sale determined the amount Plaintiffs owed to be $329,183.52 ($1,958.38 (attorney's fees) + $28,000 (attorney's fees) + $3,500 (costs and disbursements) + $295,725.18 (principal and interest)). (Dkt. No. 35-5, at 5). Although there were bankruptcy proceedings between the 2012 Amended Judgment and the issuance of the 2024 issuance of the Notice of Sale in Foreclosure, the documents the parties have submitted do not identify the amount Plaintiffs allegedly owe at present.[13] In any event, to the extent Plaintiffs challenge, through RICO or the FDCPA, or through state law claims of fraud and conversion, the 2012 Amended Judgment of Foreclosure and Sale, in the amount of $329,183.52 plus legal fees and costs, and to "halt" the foreclosure on the Herse Farm Property, they allege injuries caused by a state court judgment and invite this Court to review and reject the state court judgment. These claims are therefore barred by *Rooker-Feldman*. *See Vossbrinck*, 773 F.3d at 427 ("To the extent [Plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars [Plaintiff]'s claim.").

However, the Complaint, Plaintiffs' supplemental submissions, and Defendants' submissions indicate that there have been multiple legal proceedings in state court and Bankruptcy Court since the 2012 entry of the Amended Judgment of Foreclosure and Sale. No party has briefed the impact of these proceedings on the Court's jurisdiction over this case.

---

[13] The Midwest Defendants note, however, that "[g]iven the length of time the Plaintiffs have been litigating their mortgage obligations, there is nothing sinister about the fact that the amount due has been periodically recalculated." (Dkt. No. 35-11, at 7 n.2).

Further, read liberally, the Complaint may be read to seek damages for injuries Plaintiffs suffered after the 2012 state court Amended Judgment of Foreclosure as well as for injuries Plaintiffs suffered as a result of Defendants' fraudulent conduct in billing, imposition of fees, and in their submissions in the foreclosure and bankruptcy proceedings. Such claims may not necessarily "require the federal court to sit in review of the state court judgment." *Vossbrinck*, 773 F.3d at 427 & n.2; *see also Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) ("The *Rooker–Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment"). Accordingly, Defendants' motion to dismiss on *Rooker-Feldman* grounds is granted as to any claim that challenges or seeks to "halt" the 2012 Amended Judgment of Foreclosure and Sale, but is denied to the extent Plaintiffs seek damages for Defendants' allegedly fraudulent billing practices or submissions in various court proceedings.

C.    **Res Judicata**

The Midwest Defendants also assert the Complaint should be dismissed as barred by res judicata. (Dkt. No. 35-11, at 14–15). Although res judicata may bar foreclosure-related claims not otherwise barred by *Rooker-Feldman*, *see*, *e.g.*, *Worthy-Pugh*, 664 F. App'x at 22 (finding that "the district court properly determined that res judicata barred [the plaintiff's] mortgage-fraud claim, because she had the opportunity to litigate that claim in her prior state court action"), in this case, the Midwest Defendants' argument is conclusory and contains no meaningful analysis, *see Whitfield v. City of New York*, 96 F.4th 504, 523 (2d Cir. 2024) ("Under New York law, as under federal law, claim preclusion is an affirmative defense that the defendant must plead and prove."). The Court therefore denies the Midwest Defendants' motion to dismiss on grounds of res judicata.

### D.    Failure to State a Claim

#### 1.    RICO

The Midwest Defendants argue for dismissal of Plaintiffs' RICO claim on the ground that the Complaint "fails to support any cognizable claims against the Moving Defendants with any plausible factual allegations" and instead presents "a disorganized jumble of statements, legal conclusions and purported statements of law." (Dkt. No. 35-11, at 10). HSBC argues for dismissal on the ground that the Complaint's only allegation concerning HSBC is the allegation that it assigned the note and mortgage to another party in 2008, and that it fails to "allege facts connecting HSBC" to any alleged wrongdoing. (Dkt. No. 44-1, at 7). Plaintiffs oppose dismissal. (Dkt. Nos. 43, 47, 48).

The RICO statute, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." To state a RICO claim, a plaintiff must plead "(1) the defendant's violation of [18 U.S.C.] § 1962, (2) an injury to the plaintiff's business or property, and (3) the causation of the injury by the defendant's violation." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (alteration in original). With regard to that first element, a plaintiff asserting a violation of § 1962(c) must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotations marks omitted). "Racketeering activity consists of the commission of a predicate act." *Aronov v. Mersini*, No. 14-cv-7998, 2015 WL 1780164, at *3, 2015 U.S. Dist. LEXIS 51695, at *7 (S.D.N.Y. Apr. 20, 2015). The RICO statute sets forth a list of acts that qualify as racketeering activity and includes "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than a year"

23

as well as "any act which is indictable under [inter alia] . . . [18 U.S.C] section 1341 (relating to

mail fraud), 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud)."

18 U.S.C. § 1961(1)(B); *see Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000) ("Section 1961(1)

contains an exhaustive list of acts of 'racketeering,' commonly referred to as 'predicate acts.'").

      In addition to alleging an enterprise, a plaintiff "must also allege that the defendants

'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs

through a pattern of racketeering activity,'" *id.* at 175–76 (alterations in original) (quoting 18

U.S.C. § 1962(c)). This means that the RICO defendant must have "participated in the operation

or management of the enterprise." *Id.* at 176 (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512,

521 (2d Cir. 1994)). "In this Circuit, the 'operation or management' test typically has proven to

be a relatively low hurdle for plaintiffs to clear," "especially at the pleading stage." *Id.* at 176.

"Ultimately, however, it is clear that the RICO defendant must have played '*some* part in

directing [the enterprise's] affairs.'" *Id.* (alteration in original) (quoting *De Falco v. Bernas*, 244

F.3d 286, 310 (2d Cir. 2001)). "Under this standard, a person may not be held liable merely for

taking directions and performing tasks that are 'necessary and helpful to the enterprise,' or for

providing 'goods and services that ultimately benefit the enterprise.'" *Flexborrow LLC v. TD

Auto Fin. LLC*, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017) (quoting *U.S. Fire Ins. Co. v. United

Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004)).

      Here, reading Plaintiffs' submissions liberally, Plaintiffs allege that Defendant Sheehan,

"as a paid legal representative for HSBC," assigned "30 mortgages" in 2008, including

Plaintiffs', to the Defendant "servicing companies," which were operated by Sheehan and

Himmelberg. (Dkt. No. 10, at 1, 4). Plaintiffs allege that these Defendants increased the

principal, legal fees, and costs for the purpose of stealing the Herse Farm Property. (Dkt. No. 1,

at 1–2). These allegations fail to allege a RICO enterprise. The only act any named Defendant is directly alleged to have committed is Sheehan's alleged 2008 assignment of the note and mortgage from HSBC to CVM Properties 1, LLC, while having a conflict of interest. While the Complaint and Plaintiffs' submissions refer at times to the "multiple servicing companies" and allege that CVM, ACM Browncroft, and FMM are all "entities under the Midwest Platform," (Dkt. No. 10, at 1, 6), none of Plaintiffs' submissions directly name any Defendant in connection with the alleged racketeering activities, i.e., fraudulent billings, mailings, representations, or submissions. Indeed, none of Plaintiffs' submissions identify any act that Himmelberg or Lovendusky committed, nor do Plaintiffs name Midwest Servicing, Inc., Midwest Servicing 2, Inc., or Midwest Asset Acceptance Group outside the caption of the Complaint. The Court therefore concludes that the Complaint fails to allege facts allowing a plausible inference of a RICO enterprise. *See Williams v. Long Beach Mortg. Co.*, No. 19-cv-970, 2020 WL 4735354, at *6, 2020 U.S. Dist. LEXIS 146927, at *15 (S.D.N.Y. Aug. 14, 2020) (finding RICO enterprise inadequately pled, in connection with allegedly fraudulent misrepresentations regarding loan and value of property in foreclosure action, where complaint did not "directly name" the defendants outside "the 'Parties' section" and there were few facts regarding "Defendants Deutsche Bank and JPMorgan Chase," who were referred to "in the list of 'mortgage-backed securities investors,'" or as "a 'subprime mortgage servicer' and 'subprime mortgage originator.'").

Nor have Plaintiffs adequately alleged racketeering activity. In support of their racketeering claim, Plaintiffs generally rely on allegations that Defendants engaged in fraudulent billing and collection activity through the USPS and Bankruptcy Court. (Dkt. No. 1, at 4 (alleging that the "fraudulent billings and collections practices by these defendants are unlawful and involve the use of the US Postal System and US Bankruptcy Court to perpetrate")).

Allegations of predicate mail fraud acts are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and must be pled with particularity. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). Thus, any allegation of fraud "should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." *Id.* (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)). However, as Defendants note, the allegations in Plaintiffs' Complaint are wholly conclusory, and despite alleging fraudulent conduct over a sixteen-year period (from 2008 to the present), do not provide any dates, contents of communications, or explanation as to why any billing or collection is fraudulent.

The allegations in Plaintiff's supplemental submissions do not save their claim, either. Although Plaintiffs provide some additional factual detail in their motion for a temporary restraining order—alleging that on or about January 5, 2024, "shysters" sent a "240+ page" document through the mail that adds $124,000 in legal fees to Plaintiffs' indebtedness," (Dkt. No. 10, at 1), this allegation falls short as Plaintiffs do not attribute this act to any specific Defendant or indicate what the document communicated or why it was fraudulent. *See, e.g.*, *Hagigi v. Yukhananov*, No. 23-cv-5549, 2024 WL 4028333, at *7, 2024 U.S. Dist. LEXIS 157984, at *18 (E.D.N.Y. Sept. 3, 2024) (finding allegation that the defendants stole "physical checks that pay[o]rs issued to Wellness Imaging and deposited them into accounts other than Wellness Imaging's account" insufficient to show RICO predicate mail fraud, because it did "not indicate which of Defendants allegedly stole the checks, or when or where this occurred, and therefore does not meet the pleading requirements of Rule 9(b)").[14] Accordingly, Defendants' motion to dismiss the RICO claim is granted.

---

[14] The Court also notes that Plaintiffs failed to file a RICO Statement as required by N.D.N.Y. Local Rule 9.2.

2.     **FDCPA**

Defendants move to dismiss Plaintiffs' FDCPA claim on the ground that the Complaint's allegations are conclusory and therefore fail to state a claim. (Dkt. No. 21, at 6–7; 35-11, at 10–11, 13–14; Dkt. No. 44-1, at 6–8). The Midwest Defendants additionally argue that Plaintiffs' have failed to allege that the loan in question was a consumer—and not a commercial—obligation. (Dkt. No. 35-11, at 13–14). HSBC additionally argues any FDCPA claim is barred by the one-year statute of limitations. (Dkt. No. 44-1, at 8–9 (citing *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015)). Plaintiffs oppose dismissal. (Dkt. Nos. 26, 43, 47, 48).

Congress enacted the FDCPA in order to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In furtherance of this goal, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). "To establish a violation under the FDCPA, (1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (citing *Schuh v. Druckman & Sinel L.L.P.*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010)).

Plaintiffs do not indicate in their Complaint, or in any submission, which FDCPA requirement any Defendant has allegedly violated. Further, all of the Complaint's allegations regarding the FDCPA are devoid of factual detail and therefore fail to provide any basis for inferring which provision might be at issue. For example, the Complaint alleges that Defendants

27

"fraudulently increase[ed]," "padd[ed]," and "inflat[ed] the alleged debt figures," used a "false

billing scheme," engaged in "fraudulent . . . collection practices," (Dkt. No. 1, at 2), and asserts

that Defendants' "dishonest efforts at billings and collection violate the letter and spirit of the

Fair Debt Collections Practices Act," (*id.* at 4). *See Kirch v. Liberty Media Corp.*, 449 F.3d 388,

398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to [defeat] a motion to dismiss." (quoting *Smith v. Local 819 I.B.T.*

*Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002))); *see also Walker v. Pitnell*, 860 F. App'x 210,

212 (2d Cir. 2021) (finding that allegations that "HSBC 'was a debt collector, and not a creditor,'

and that the 2008 mortgage note assignment was fraudulently backdated at the time the

foreclosure action began" were "conclusory" and "insufficient to state a claim under the

FDCPA"). Again, even viewing the Complaint together with Plaintiffs' other submissions does

not alter the Court's conclusion. In their motion for a temporary restraining order and responses

to Defendants' motions, Plaintiffs include some additional factual detail, including, for example,

allegations that CVM Partners 1, LLC added $29,000 "with no billing ever," and that Plaintiffs

were assessed a "property preservation fee of $8,173.99," but there was "never a bill." (Dkt. No.

10, at 7). But even construed liberally, neither of these allegations, nor any other, allows a

plausible inference that any named Defendant violated the FDCPA. Accordingly, Defendants'

motion to dismiss Plaintiffs' FDCPA claim is granted.[15]

## VI.    LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend

"when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.

---

[15] Having concluded that the Complaint fails to state a plausible claim for relief under the FDCPA, the Court does not
reach Defendants' statute of limitations arguments.

2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its

pleading only with the opposing party's written consent or the court's leave. See Fed. R. Civ. P.

15(a)(1)–(2). A court may, in its discretion, deny leave to amend "for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery*

*Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023).

 Here, the Court does not have jurisdiction over claims seeking review, rejection, or relief

from the Amended Judgment of Foreclosure and Sale, and any attempt to amend the Complaint

to salvage Plaintiffs' claims in this regard would be futile. The Court likewise lacks jurisdiction

over Plaintiffs' claims against Trustee Swimelar and, without leave from the Bankruptcy Court

for the Northern District of New York, amendment would be futile. However, in the event

Plaintiffs obtain leave from the Bankruptcy Court for the Northern District of New York to file a

claim against Trustee Swimelar, the Court grants Plaintiffs leave to file an amended complaint as

to Trustee Swimelar. Further, in recognition of their status as pro se litigants, and because it is

possible that they may be able to assert cognizable claims with better pleading, the Court grants

Plaintiffs leave to file an amended complaint within thirty (30) days of the date of this Order

with respect to RICO and FCDPA claims insofar as they claim damages from Defendants'

allegedly fraudulent conduct.

 In any amended complaint, Plaintiffs must clearly set forth the facts that give rise to the

claims, including the dates, times, and places of the alleged underlying acts, and each individual

or Defendant who committed each alleged wrongful act. Any such amended complaint will

replace the existing complaint, and must be a wholly integrated and complete pleading that does

not rely upon or incorporate by reference any pleading or document previously filed with the

Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well

established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). Any exhibits that Plaintiffs wish the Court to consider going forward must be attached to the Amended Complaint. This means that their previous complaint and other filings will no longer be the operative documents containing their pleadings and exhibits—everything that is essential must be contained in or attached to the Amended Complaint.

## VII.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 20, 35, 44) are **GRANTED**; and it is further

**ORDERED** that all claims seeking review, rejection, or relief from the 2012 Amended Judgment of Foreclosure and Sale are **DISMISSED without prejudice and without leave to replead**; and it is further

**ORDERED** that all claims against Trustee Swimelar are **DISMISSED without prejudice and with leave to replead if Plaintiffs obtain leave to file suit against Trustee Swimelar from the Bankruptcy Court for the Northern District of New York. If Plaintiffs do not obtain such leave, they may not replead their claims against Trustee Swimelar.** It is further

**ORDERED** that Plaintiffs' RICO and FDCPA claims are otherwise **DISMISSED without prejudice and with leave to replead**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiffs do not file an amended complaint within thirty (30) days,

the Clerk of the Court is directed to close this case without further order.

**IT IS SO ORDERED.**

Dated: <u>December 12, 2024</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge